**WO**                     NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Kristi Williamson,<br><br>                    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>                    Defendant. | No. CV-15-01713-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Kari Kristi Williamson's Application for Supplemental Security Income Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint on August 28, 2015, seeking judicial review of that denial. (Doc. 1.) The Court has reviewed the Administrative Record (Doc. 12, R.) in its entirety, as well as Plaintiff's Opening Brief (Doc. 22, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 26, "Def.'s Br."), and Plaintiff's Reply (Doc. 27, "Pl.'s Reply"), and now affirms the Administrative Law Judge's decision (R. at 8-25), as upheld by the Appeals Council (R. at 1-6).

**I.    BACKGROUND**

Plaintiff filed an Application for Supplemental Security Income on July 30, 2013 alleging disability beginning January 23, 2007. (R. at 153.) Plaintiff's claim was initially denied on January 3, 2014. (R. at 53.) Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on January 21, 2015. (R. at 26-51.) On May 7,

2015, the ALJ denied Plaintiff's request for benefits. (R. at 8-25). On July 2, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 1-6.) The present appeal followed.

The Court has reviewed the record, including hearing testimony and medical evidence, in its entirety and provides a short summary below.

### A.   Partners in Recovery

Since 2007, Plaintiff has been under the primary care of Dr. Safdar Ali in conjunction with Partners in Recovery (a Magellan clinical site), and their records comprise the majority of the medical evidence. (*E.g.*, R. at 475.) In July 2011, Dr. Ali diagnosed Plaintiff with unspecified mood disorder, posttraumatic stress disorder, and borderline personality disorder. (R. at 464.) From 2011 to 2014, Plaintiff saw Dr. Ali no fewer than 18 times, and throughout Dr. Ali's treatment of Plaintiff he assessed various symptoms consistent with and related to those diagnoses (R. at 411-15, 430, 433, 438-39, 448, 454, 457, 460, 464), while often noting improvement and stability (R. at 403, 405-06, 408-09, 412, 415, 418, 421, 423-27, 429-30, 433-36, 454, 457, 460, 464, 483-84).

In November 2013, Dr. Ali wrote a medical source statement opining that Plaintiff had chronic mental illness resulting in loss of functions including the ability to work and be productive. (R. at 475.) On March 25, 2014, Dr. Ali completed a Supplemental Questionnaire regarding Plaintiff's Residual Functional Capacity ("RFC"), finding that Plaintiff would have slight limitations in making work-related judgments and interacting with the public, moderate limitations in the ability to understand and carry out short, simple instructions and interacting with the public, and marked limitations in the ability to understand and remember detailed instructions, interact appropriately with supervisors, and respond to work pressures and changes in routine work settings. (R. at 476.) Dr. Ali further commented that he considered Plaintiff to be seriously mentally ill based on a psychiatric disorder and loss of function. (R. at 477.)

Treatment notes from Partners in Recovery on at least seven other occasions in 2012 and 2013 show Plaintiff reported lack of energy, depressed mood, anxiety, and

1  moderate severity of symptoms. (R. at 439-520.) During many visits, including her final
2  one, Plaintiff denied symptoms of mania, depression, or psychosis, and had no
3  overwhelming anxiety, and Plaintiff's patient notes stated that she was cooperative,
4  maintained good eye contact, and exhibited appropriate affect and euthymic mood. (R. at
5  500-19.)

6        On January 20, 2015, Elise Wise, a Nurse Practitioner at Partners in Recovery
7  wrote a general assessment letter diagnosing Plaintiff with unspecified mood disorder and
8  posttraumatic stress disorder and noted that her symptoms include the inability to leave
9  her house or go to public places. (R. at 521.)

10        **B.**    **Paradise Valley Hospital**

11        On August 10, 2011, Plaintiff was admitted to Paradise Valley Hospital via its
12  Emergency Room in Phoenix, Arizona after attempting to commit suicide by ingesting
13  various prescription drugs, including Effexor, Abilify, and Benztropine. (R. at 239-383.)
14  Plaintiff stated that she had taken all of the prescription medicine in her possession and
15  had attempted suicide in the past. (R. at 250.) After stabilizing, Plaintiff reported that she
16  was regretful for the suicide attempt and would not do so again. (R. at 261.) Plaintiff was
17  discharged on August 12, 2011, after signing a safety contract to maintain
18  communication with counselors after her discharge. (R. at 267.)

19        Plaintiff was admitted to Paradise Valley Hospital via its Emergency Room on
20  numerous other occasions, including May 14, 2011, October 3, 2011, October 8, 2011,
21  November 25, 2011, December 2, 2011, and March 22, 2012, citing throat, chest, or sinus
22  pain, often noting depression as well. (R. at 289-317.) Plaintiff was also admitted to
23  Paradise Valley Hospital on September 8, 2014, stating that she was experiencing severe
24  depression and anxiety and requesting additional anti-depressant medication. (R. at 522-
25  31.)

26        **C.**    **State Examining Physicians**

27        On December 17, 2013, Dr. David Yandell reviewed the medical record,
28  completed a mental capacities assessment form, and concluded that Plaintiff was not

1 significantly limited in most categories and moderately limited in various work-related capacities. (R. at 61-63.) As part of his analysis, Dr. Yandell also completed a Psychiatric Review Technique form, concluding that Plaintiff had moderate restrictions of activities in daily living, moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (R. at 59-60.) Dr. Yandell found insufficient evidence to assess whether there were episodes of extended decompensation. (R. at 59.) Dr. Yandell concluded that Plaintiff was severely limited and impacted by her impairments but remained able to perform simple work (R. at 61) and simple job tasks on a sustained basis (R. at 63).

On June 12, 2015, as part of the reconsideration determination, Dr. Stacy Koutrakos also reviewed the medical record and completed a mental capacities assessment, including a Psychiatric Review Technique form. (R. at 72-77.) Dr. Koutrakos reiterated Dr. Yandell's assessments and also found no significant limitations regarding the ability to understand and remember detailed instructions. (R. at 75-76.)

## II.     LEGAL STANDARDS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404 (Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff argues that the ALJ erred by: (1) failing to afford appropriate deference to the opinion of Plaintiff's treating psychiatrist, Dr. Ali; (2) improperly rejecting Plaintiff's symptoms testimony without legally sufficient reasoning; and (3) failing to consider the entirety of Plaintiff's limitations in assessing Plaintiff's RFC. (Pl.'s Br. at 1-2.)

#### A.   The ALJ Did Not Err in Discounting the Opinion of Dr. Ali

Plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Ali. (Pl.'s Br. at 11-17.) Defendant argues that the ALJ properly weighed the treating professionals'

assessments, offering specific and legitimate reasons supported by substantial evidence in the record for giving partial weight to certain assessments. (Def.'s Br. at 3-8.)

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

In this instance, the ALJ found that the assessments of Plaintiff's treating psychiatrist, Dr. Ali, were contradicted by the objective medical evidence, including Dr. Ali's progress notes, and the assessments of Dr. Yandell and Dr. Koutrakos. (R. at 16-19.) The Court must therefore examine whether the ALJ provided specific and legitimate reasons for discounting the assessments of Dr. Ali, supported by substantial evidence when examining the record as a whole. *See Carmickle*, 533 F.3d at 1164.

Rather than rejecting Dr. Ali's opinion outright, the ALJ gave his generalized assessment letter and Supplemental Questionnaire only partial weight. (R. at 16.) Primarily, the ALJ found that Dr. Ali's opinion was not supported by the objective medical record, including Dr. Ali's own progress notes. (R. at 18.) The ALJ supported this conclusion with citations to Dr. Ali's notes that Plaintiff was benefitting from medication without adverse effects, that she was very much improved, psychiatrically stable, feeling good, exhibited appropriate affect, euthymic mood, good concentration, judgment, insight, and memory, and was oriented and alert. (R. at 18.)[1] The ALJ also found Dr. Ali's assessment inconsistent with other progress notes from Partners in Recovery and Magellan indicating that Plaintiff was stable, doing well, improving, coping with current stressors, and without any symptoms of decompensation. (R. at 18.)

---

[1] Plaintiff contends that the repeated notations regarding Plaintiff's improvement were computerized and made without regard to Plaintiff's actual condition. Plaintiff provides no evidence, other than Plaintiff's own speculation, for this conclusion. Accordingly, the Court does not give weight Plaintiff's speculation in its review of the objective medical record. (Pl.'s Br. at 7, n.5, 13.)

These findings are consistent with other portions of the medical record in which Plaintiff expressed that she was beginning to take courses in nursing (R. at 435, 441, 456) and was later contemplating enrolling in DeVry University (R. at 417, 470). Plaintiff also received a visit from her daughter who lives in South Dakota (R. at 423), expressed a desire to move to India with friends (R. at 429), and repeatedly stated that she was not dealing with crises, spoke to her daughter regularly, and was without current stressors (R. at 423, 441, 444, 483).

Further, while a claimant need not be "utterly incapacitated" to be considered disabled under the Act, *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005), Plaintiff's testimony and statements to her treating psychiatrist and staff support the conclusion that she had the functional capacity to regularly care for her pets, use a computer, watch television, use social media, reconnect with her daughter, keep in touch with friends and family, obtain a medical marijuana license, and endeavor to enroll in upper-level continuing education. (*E.g.*, R. at 417, 425, 435, 441, 444, 456, 470.) This testimony is inconsistent with, for example, the significant limitations Dr. Ali attributed to Plaintiff in his November 13, 2013 letter and Supplemental Questionnaire as to RFC. The ALJ instead gave greater weight to the opinions of the state agency's reviewing physicians regarding Plaintiff's RFC because the ALJ found their opinions were not inconsistent with the greater objective record, including the weight of Plaintiff's progress notes and Plaintiff's testimony. (R. at 19.) The Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in determining to give partial weight to Dr. Ali's opinion regarding Plaintiff's limitations due to her psychiatric impairments and assigning greater weight to the reviewing physicians. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Thus, the ALJ properly considered the opinion of Dr. Ali.

### B.     The ALJ Properly Weighed Plaintiff's Testimony

Plaintiff also argues that the ALJ erred in his consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 17-20.) In response, Defendant contends that the ALJ gave Plaintiff's testimony proper weight because it was contradicted by objective medical

1 evidence, other portions of Plaintiff's testimony, and reports of Plaintiff's daily activities.
2 (Def.'s Br. at 8-12.)

3 "Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). The ALJ's finding that a claimant is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Id.* at 493 (internal citations and quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal citations and quotation marks omitted).

Plaintiff argues that the ALJ erred in her determination that "the record shows her activities and ability to interact with others is less restricted than alleged." (Pl.'s Br. at 18 (quoting R. at 16).) The Court disagrees. While the ALJ generally credited Plaintiff's testimony regarding her conditions, the ALJ gave specific, clear, and convincing reasons for her determination that the severity of symptoms stemming from those conditions were at odds with the medical record and other testimony. In her decision, the ALJ pointed to specific medical records and progress notes that were contrary to Plaintiff's testimony regarding the debilitating nature of her symptoms. (R. at 16-17.) The ALJ also pointed to Plaintiff's inconsistent statements regarding her symptoms and side effects from her medications. (R. at 17.) Finally, the ALJ noted that Plaintiff's testimony was controverted by her daily activities. (R. at 16-17.) Particularly, the ALJ again noted that Plaintiff maintains the ability to travel, keeps social contacts, exhibited good mood and interaction, prepared household meals and completed household chores, and has long

been contemplating upper-level education that would presumably lead to gainful employment, as examples of activities incongruent with Plaintiff's testimony. (R. at 16.) The ALJ also cited Plaintiff's improved condition, which appeared to be due to the elimination of temporary stressors and compliance with treatment. (R. at 17.) The Court finds that the ALJ's extensive review of and citation to the medical record and correlating testimony provides specific, clear, and convincing evidence for accepting Plaintiff's diagnoses and symptoms, but not accepting the severity and disabling nature of those conditions.

### C. The ALJ Did Not Err in Determining Plaintiff's Skill Limitations

Plaintiff lastly argues that that the ALJ's determination of Plaintiff's skill limitations did not account for acknowledged moderate limitations in Plaintiff's ability to maintain concentration, persistence, or pace. (Pl.'s Br. at 20). Defendant responds that substantial evidence supported the ALJ's assessment of Plaintiff's skill limitations and that her assessment captured the entirety of Plaintiff's debilities. (Def.'s Br. at 13.)

Courts affirm an ALJ's RFC determination where the ALJ has applied the proper legal standard and supported her decision by substantial evidence. *Bayliss*, 427 F.3d at 1217. Here, in making her RFC determination, the ALJ provided a comprehensive assessment of all of Plaintiff's conditions and symptoms. (*See* R. at 14-19.) For support that Plaintiff retained the ability to maintain concentration, persistence, or pace, the ALJ pointed to the Plaintiff's mental status exams—in which the Plaintiff retained the ability to concentrate—and to numerous occasions in Dr. Ali's notes in which he observed that Plaintiff's ability to concentrate was "good." (*E.g.,* R. at 403, 406, 409, 412, 415, 421, 427, 442, 448, 460, 468, 484, 498, 519.) The Court finds that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence as she took into account all the limitations for which there was record support, and thus the Court will not remand on this issue. *See Carmickle*, 533 F.3d at 1162; *Bayliss*, 427 F.3d at 1217; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("an ALJ's assessment of a claimant

adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony").

To the extent the ALJ may not have fully considered the issues cited in her RFC determination, Plaintiff has not shown that this alleged failure constitutes anything more than harmless error. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotation marks omitted). The Court finds that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence as she took into account all the limitations for which there was record support, and thus the Court will not remand on this issue. *See Carmickle*, 533 F.3d at 1162; *Bayliss*, 427 F.3d at 1217.

### D. The Credit-As-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule, which were there a basis for remand, would result in remand of Plaintiff's case for payment of benefits rather than remand for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–102 (9th Cir. 2014); (Pl.'s Br. at 23). Because the Court has found there is no basis for remand, neither the ordinary remand rule nor the credit-as-true rule applies. *See Treichler*, 775 F.3d at 1099–102.

**IT IS THEREFORE ORDERED** affirming the decision of the Administrative Law Judge (R. at 8-25) as upheld by the Appeals Council (R. at 1-6).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 2nd day of September, 2016.

*(signature)*
Honorable John J. Tuchi
United States District Judge